Good morning. Good morning, Your Honors. Boris Trazon for the appellant. And if I would like, I would like to reserve four minutes for rebuttal. If it may please the Court, this is a matter that deals with insured's duty after a property damage loss. On September 26, 2013, Neda Raschkovsky, who is a dentist by trade, not any construction business, comes home and discovers that there is a water event that took place. In subsequent depositions, she describes that she feels that the floor is squishy and she thinks there's something wrong. Four days later, she calls Allstate Insurance and reports the loss. During that conversation, she describes to the best of her ability what occurred. Now, at this point, it's important to point out that under the Aiden case cited in the brief, the insured only has a duty to demonstrate that the loss occurred within coverage of the policy. And we submit that she did. She said she came home, there was no event there before, she feels water, she reported the loss. Allstate Insurance, in response, does absolutely nothing. It doesn't send anybody out, it doesn't investigate. Ms. Raschkovsky says she intends to call the plumber. And Allstate tells her, well, after you do, let us know what it is. Well, under California law, can an insurer require that an insured investigate and ascertain the cause of their loss? I don't believe so. I believe the insurance company has a duty to investigate the loss, and I believe that duty cannot be delegated to the insured. And respectfully, it only makes sense. I mean, you have a balancing that needs to take place. On one hand, you have a very unsophisticated insured who, like most people, has never read her policy. All she does is pick up the phone and call her. There is no requirement. I mean, she doesn't have to call the plumber. She doesn't have to expend money. Under the contract, it's almost like a binary formula. If you have a loss and you report it to the carrier, the duty shifts to the carrier to go forward with it. So what she does is she reports the loss. Then she calls the plumber, and she describes what the plumber describes, and she immediately proceeds to apply her duties under the policy. She begins to remediate. Allstate is nowhere to be seen. They don't come in to capture the evidence. They don't come in to preserve the evidence. What they do, in fact, do is they just play the long game. It's easy to take pleasure. Well, okay, so you've got punitive damages and bad faith claims, right? Correct. So my question on that as you're going through this, how reliant are your bad faith and punitive damage claims on, I believe the person's name is Tuma. Tuma's statement to, I'm just going to say the first name, Nita, that Nita had to ascertain the cause of the loss before Allstate would send in an adjuster. As part of parcel and ongoing activity, it is relying on it because Allstate is not doing what it's supposed to do. Well, are you relying on that for your bad faith and punitive damage claim? As part of it, yes. Okay, this was a summary judgment, right? Correct. So you presented some expert opinions, which I believe the court disallowed or so. Besides your experts' opinions, what is your best evidence that the leak in question was set in? Or do you need to get your expert opinions in in order to establish that? I do not, and I can take you through various steps, and there is a number of instances of evidence where we can show that the leak was not sudden. Number one, it wasn't there the day before. When she came in, this is an entryway into her house. It's a three-level house. She enters from the second floor. She goes through there all the time. If there is no water, there is no water. This is the only thing she needs to do to show that this is a sudden and accidental discharge. There's two cases that are primary in this subject. One is the Brown case. Another one is the ACL technologies cases. Both cases are easily distinguishable from this case. In Brown's case, there is an agreement that the leak has been going on for months, and ACL deals with temporal issues of sudden and accidental as being too disjointed. But here, not only that, we have two percipient witnesses who are experts, and those two percipient witnesses say this is not a long-term ongoing. So are you talking about Howard? I'm talking about Howard, and I'm talking about Mr. Sherman as well. All right. Well, Howard's expert report is somewhat short and seems to provide little reasoning for his conclusion that the leak in question did not exist for a long period of time. And the district court rejected it, correct? Correct. So why wasn't the district court justified in rejecting it based on that analysis, or was the district court weighing the evidence? Well, we believe the district court definitely weighed the evidence, although it couldn't reach conclusions that it did. But there's two reasons why his expert declaration is appropriate. Number one, he was percipient. He is at the scene. He has expertise based on his experience, training, and education to determine this is not a long-term lease. Allstate does not have that benefit. Allstate is using photographs without reference, how they were taken, what kind of lighting and things like that. And even in those photographs, what it does, it says there are multiple instances of water loss. Well, we don't particularly care about multiple instances of water loss because we only care about the most recent one. Multiple instances doesn't mean one long continuous one. It means that during the existence of a house, a water event took place. Without going further, okay, but what about the recent one? Was it a sudden and accidental? And these are common sense things. These are not things that even require expertise. What it does require is the court, under the Premiano case, to say, okay, if you have an issue with Mr. Howard's declaration, that goes to relevance. That goes to weight. The court, I think, went too far by essentially acting as a gatekeeper. And the acting as a gatekeeper under the same Premiano case does not mean you simply kick out the evidence. If there is a relevance issue, if you want to apply weight, if you want to question the expert, that's the appropriate, not to kick it out. Because essentially what it did, it said that Ms. Ryszkowski's testimony is not credible because she used different words to describe her observations of the sudden and accidental water loss. And then it threw out the declarations of Mr. Sherman and Mr. Howard based on the fact that they don't address a particular point in the Allstate's expert declaration. But the Allstate's expert declaration didn't really require it to be addressed because it's an opposite. The fact that there is evidence of a prior loss taking place is not the same that this loss is not sudden and accidental. And the court moved on that subject and it moved forward on that subject and after that everything fell by the wayside without opportunity for the plaintiff and the plaintiff's expert to explain what they're meaning by this. So on that particular subject, we believe that the court went too far. Having said this, then we kind of go through the steps and our position is that Allstate should be enjoined, actually, for even making the arguments they're making. For a very basic reason, they did not investigate the loss. The experts that are being relied on came on only in litigation stage. The court actually, in its opinion, found issue with the way that the experts who investigated the loss approached their product. But what the court said is, but that does not negate the opportunity. It does not negate the finding that Ms. Roszkowski did not meet the primary goal of demonstrating that the loss occurred within the policy provisions. And we respectfully submit that that is not the case. She said it came in. There wasn't a loss before. There is a loss now. Under the Eiden case, all she has to do is demonstrate. She doesn't need to prove. That's all I have on this subject. All right. So you want to reserve the balance for rebuttal? I do, Your Honor. Thank you. May it please the Court. Good morning. Good morning. Gregory Michael McGregor appearing on behalf of Allstate Diapoli. A lot in this case depends upon which foot you get started on. This policy, I wouldn't say it's unique. It's unusual. But it's agreed that this is what the policy says. It requires for loss to be covered that it be a sudden and accidental event. Many of the cases that discuss sudden and accidental, including the whole raft of environmental cases, have a provision that covers and then there is an exclusion that is triggered and then an exception to the exclusion. You have a classic swearing match between experts in this case, Mr. McGregor. Doesn't that create an issue of fact that precludes summary judgment in and of itself? I don't think it does. And obviously the trial judge didn't think it does. The trial judge looked at it and I think this is, it's not for me to judge, but this is an unusually comprehensive order that was written by the judge. Well, but tell us why that isn't weighing the evidence. That's what I'm concerned. If we said the district court erroneously excluded Sherman's and Howard's expert witnesses, I don't see how we can't send it back. Well, Your Honor. I don't see how the court, I'm struggling with how the court could have done that without weighing the quality of those witnesses. What the judge did. And deciding what I believe and what I don't believe, which you can't do on summary judgment. I don't believe he was weighing credibility. What I think, and I think he took pains to do this. If you look at his order, he separated out each piece of evidence that was proffered by the plaintiff and the experts and evaluated it in terms of whether or not it was sufficient evidence to establish the threshold issue in order to get in the policy, which is a sudden and accidental loss. And he looked at, just as he is required as the gatekeeper, counsel made some reference to gatekeeper as if that's not what he is. That's exactly what evidence rule 702 requires him to do. Be a gatekeeper, especially with respect to expert reports. The expert report must be based on an understandable methodology. It must be based on science that's provable, data that's provable, and what the judge did in this order. You can look at it starting at page. Did Howard see it before you did? See the loss? Yeah, see the scene of the crime, as it were. Before Allstate did? Yes. I believe so. Okay. And what wasn't said here, because I don't, and I think the judge also agreed this wasn't relevant at this stage, was that when the claim was reported to Allstate, it was also reported that a plumber had been there and said, the plumber says he doesn't know what happened until he opens the wall. And Allstate said, well, if you open the wall, call us, and then we'll come out. By the time the wall was opened and the call was made, this is all in the record, the undisputed facts, remediation had been begun by the insured and the inspector couldn't access the loss to see. So he went by the photographs, many of which were taken by Mr. Howard. And whose fault is that? You didn't send anyone out to investigate. Because the wall wasn't open. Well, but under California law, can an insurer require that an insured investigate or ascertain the cause? No, and that's not what was done here. This is a practical situation. You have a case where the homeowner calls in a loss and describes what she described and says, I have a plumber, the plumber's looked at it, and he said he can't tell, nobody can tell what happened until he opens the wall. So at that point, it is perfectly appropriate, it is done all the time, the standard in the industry, is to allow the wall to be opened and then you get a call, you get notification, keep us posted, that's what it says in the document, in the claim file, and we'll come out. What happened was they arranged to come out, they got a call, said the plumber's been out here, they made an appointment, then they were called by Mrs. Weskovsky, also in the record, and she said, I need you to wait a week before you come out. They waited a week, and when they got there, the containment was up, the remediation was underway, and they could not access the part of the pipe, which we now learned was faulty, which is called a shower arm, which is the part that comes through the wall. The reason this is the way the case proceeds and the whole discussion about bad faith and punitive damages is premature is because the trial judge correctly understood that in order to get anywhere with this case, you need to have a claim that falls within the four corners of the policy. And in order to do that, the only kind of loss that is covered on this policy is a sudden and accidental loss. Which Howard says that it was. So if the district court was erroneous in excluding that, then you're there. Well, I think you have to go further than that. You have to find that not only was the judge erroneous in drawing that conclusion, but that he abused his discretion, in the words of the Boyd case from this, not this panel, but this Ninth Circuit Court, an abuse of discretion will be found only if the appellate court is firmly convinced that the reviewed decision lies beyond the pale of reasonable justification under the circumstances. And that has been held, that abuse of discretion is a very high barrier, and there is nothing in an opinion, written, this 10-page opinion that goes through every piece of evidence that was proffered that can be considered an abuse of discretion. The judge says he's the gatekeeper. It reads more like a bench trial, though. That's the problem. It was a summary judgment motion. I know, but a summary judgment, having been a law in motion judge, there are a lot of cases that come in front of you, and you might say, well, hey, this dog don't hunt. But that doesn't mean there's not a triable issue here. And when you read it, it reads more like, well, there was this, there was that, and I'm taking this out, I'm weighing this, and therefore I come to the conclusion that summary judgment was appropriate. Okay. I understand that you see it that way. I believe that if you carefully review the opinion that was written by the district judge, obviously he knows how he's going to be reviewed. He's been around a very long time. He knows how he's going to be reviewed, and he knows that he needs to dot the I's and cross the T's as gatekeeper. That's why he says that the Sherman report, he notes that it governs that rule 702, evidence rule 702, governs the admission of expert opinions and demands that expert testimony relate to scientific, technical, or other specialized knowledge and does not include unsubstantiated speculation and subjective beliefs. Now, the court's determination that Mr. Sherman's report, like Mr. Howard's report, was full of speculation. After all, Mr. Howard said, well, it couldn't have been going on for very long because somebody would have noticed. Well, that's not very scientific, according to the trial judge, and he pointed that out. And under 702, he is in a position to manage and control what expert testimony gets before the jury. And in each of these cases, when he analyzes the Sherman report and he analyzes the Howard report, and he also had before him the Daly report and the Kreitenberg report submitted by Allstate, which are, in the words of the court, meticulously prepared analyses of what happened. What he ruled was not that he didn't believe Howard or Sherman, but that Howard or Sherman did not meet the threshold requirement under 702 to establish that there was a sudden and an accidental loss, in other words, that the policy was even triggered. Therefore, you don't get to bad faith, you don't get to breach of contract, you don't get to whether or not Allstate moved quickly enough. This is about the plaintiff's burden and the judge, and they chose to make their burden by relying on expert reports, and the judge went through the expert reports and determined they were based on speculation, they were internally inconsistent, they were inconsistent with established facts, for example, that the shower arm, which was where the leak was, is not under constant pressure. Why does that matter? Because you can't have a sudden and accidental. It just sounds like a jury argument. Well, I'm in the either enviable or unenviable position of defending a very thoroughly thought through report and decision from the trial judge, and I don't think you can find anything in here that you can point to and say this is an abuse of discretion, this is a judge who was unhinged from any reasonable justification for his report. It's all in the report, and that's what we have to go by. So the notion of anything else about the case or the claim is premature until this court sends it back to Judge Klausner and says, you have abused your discretion and you should have let in some of these reports. I believe, and I've defended many cases of this kind in many decisions before this court, that this is an unusually well thought out and written opinion that was written by a judge who knew that the three of you would be here to decide whether or not he was abusing his discretion. That's all I can tell you. If it goes back, it goes back. But I feel that this determination that they never got within the policy is not trying the case. It is weighing the sufficiency of the offering that was made by the plaintiff who had the burden below, the appellant here, and I believe his decision was the correct decision. Thank you for your argument. Thank you very much. Thank you. If I may, let me start from the back and kind of move up. Let me address the issue of a non-pressurized pipe, the shallow arm. Mr. McGregor is correct. When the pipe goes on, the water goes through, the leak occurs. But at the same time, that explains multiple evidence of water permeation. Every single time somebody turns on the shower, there is a spray. Abusive discretion standard. On the court's decision, if you turn to page, I believe seven, and I just wanted to read from line decision. Netta's deposition testimony, however, belies her declaration. Contrary to Netta's declaration that she observed a sudden and accidental escape of water, her deposition testimony indicates she did not witness any signs of burst water. No flooding, running water, pools, puddles, or standing water. The declaration says, I observed sudden and accidental water discharge. There was squishing sound on the floor when I came through. This is weighing of the evidence. The judge is taking, I don't like the way you describe it to mean sudden and accidental. I am interpreting it this way. That is a classic weighing of the evidence. Mr. McGregor indicated that this standard in the industry is essentially not to investigate the loss. Just because this is what insurance companies do regularly doesn't mean it's right. It doesn't mean it's in accordance with the California law. They chose not to come out. They informed the insurer of the duty under the policy to immediately remediate and to immediately take actions to make sure the loss does not go forward. So I think you presented someone by the name of Shaver. Yes. That was purported to be an insurance expert that said in her report that an insurer violates the California Fair Claims Settlement Act if it requires the insured to perform such an investigation. What happened? Was Shaver's declaration included or excluded? I don't remember. If I may? I believe that her declaration was excluded because I don't have it in the record. So I don't know the answer to that question. But the concept is if they don't investigate, if they don't ascertain themselves what is the loss, they're essentially placing the burden on the insured to do the investigation. The burden is hire the expert, break down the wall, and then prepare to defend your position. That's not what the Eiden case requires. The Eiden case required demonstrate that the loss occurred within the policy confines. And what happened is she called the insurance company and said, hey, there wasn't water there the day before I came in, now there is water. If they disagree with her conclusions, they need to investigate it, not wait for her to do more. Now, my understanding is that they didn't take action in December of 2013 or January of 2014. They sent an adjuster to the home who lacked authority to make a coverage determination, and then all state took six months to determine that coverage should be denied and that the denial was based at least in part on homeowners' remediators, the home remediators' opinion that was formed after looking at 12 to 14 pictures. Is that a correct statement of what was before the court? I believe so. Okay. If anybody has any more questions. We don't appear to, so you're not compelled to use every second of your time. Thank you very much. All right. Does that matter? This matter will then stand submitted.
judges: Callahan, Owens, Faber